UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 14-B-81270 |
|   Lester D. Scott | ) | |
|      and | ) | Chapter 13 |
|   Rosiland R. Scott, | ) | |
|      Debtors. | ) | Judge Lynch |
| | ) | |

## MEMORANDUM OPINION

The Chapter 13 Standing Trustee moves for the dismissal of this case pursuant to 11 U.S.C. § 1307 (c) alleging a material default because the Debtors failed to make several payments due under the terms of Debtors' plan of reorganization. In response to the trustee's motion, Debtors Lester and Rosiland Scott request a second modification of their plan in order to increase the monthly plan payments and "defer" payment of their current arrearage beyond the initial term of their plan but within the sixty month period mandated by Section 1329 (b) of the Bankruptcy Code. For the reasons discussed below, the Debtor's motion will be granted and the trustee's motion denied without prejudice.

## JURISDICTION

This Court has jurisdiction to decide these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the Unites States District Court for the Northern District of Illinois. These are core proceedings under 28 U.S.C. § 157(b)(2)(A), (B), (L) and (O).

## FINDINGS OF FACT[1]

### Undisputed Facts

Lester and Rosalind Scott commenced this Chapter 13 case on April 21, 2014. The Debtors' petition and original schedules disclosed that Ms. Scott was employed as a bus driver. Mr. Scott is unemployed and receives Social Security benefits. They

---

[1] The following sets forth this Court's findings of fact as required by Fed. R. Bankr. P. 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

have no dependents. In their initial submissions the Debtors' estimated that their monthly income would exceed their household expenses by $726.56. On June 13, 2014, this Court confirmed the Debtors' proposed Chapter 13 plan.

Under their original plan, the Debtors agreed to pay $725 to the Chapter 13 Trustee over forty-eight months, realizing a "plan base" of $34,800. The plan provided for the payment of a mortgage arrearage and two secured claims from the installments paid to the trustee. Current mortgage and student loan payments, however, would be paid outside the plan. While the plan did not commit to minimum distribution to general unsecured creditors,[2] it estimated that $8,020.88 may be available to be paid to them upon completion.

Non-governmental creditors had until August 19, 2017 to file proof of claims. *See* FED. R. BANKR. P. 3002(c). The general unsecured claims filed by then amounted to $29,568.84, somewhat less than the amount estimated in the plan. Of this amount, $5,246 involved the student loans to be paid outside the plan.

The Debtors moved to modify their confirmed plan in October 2015 to address the plan payments they had missed when their household income dropped following Ms. Scott's retirement. The Debtors proposed reducing their monthly payment to $540 beginning November 2016 and deferring payment of the $3,335 arrearage, approximately 4.6 months of payments, "until the end of the plan." (ECF No. 32.) The Chapter 13 Trustee did not object to the proposed modification and withdrew her motion to dismiss. On November 11, 2016, this Court granted the Debtors' motion.

Later, Mr. Scott became ill. As the Debtors incurred mounting out-of-pocket expenses for his treatment, therapy and medications, they again fell behind in their plan payments and, on June 6, 2017, the Chapter 13 Trustee renewed her §1307(c) motion to dismiss. The Debtors responded with this second motion to modify the plan. (Motion, ECF No. 37.) As initially filed, the Motion vaguely proposed another "deferral" of their arrearage "to the end of the plan" that would now complete within

---

[2] The plan listed "0%" to be the minimum percentage to be paid to the general unsecured creditors. (Plan, ECF No. 8.)

sixty months, instead of the original four year term. The modification did not propose to change either the plan "base," the total amount to be paid over the course of the plan or—at least initially—the amount of the monthly installments.[3]

On May 26, 2017, the Social Security Administration notified Ms. Scott that it had approved her application for benefits. According to the notice she would begin receiving $940 per month beginning August 16, 2017. (ECF No. 42.)

Additional Procedural and Factual Background

The Debtors contend that the medical expenses they have incurred as a result of Mr. Scott's recent illness has "prevented them from making payments to the trustee." In her written response, the Chapter 13 Trustee objects to the proposed plan modification principally because it results in an additional "deferral" of plan payments. The trustee stands on her motion to dismiss.

On July 28, 2017, the Court held a hearing on the competing motions. Both Debtors testified and were questioned by the standing trustee. Mr. Scott confirmed that he continues to receive monthly disability payments of $1,820 and is not employed. According to Mr. Scott, a payment deferral is needed at this time "due to [his] medical issues." In recent months he has been undergoing outpatient treatment at a hospital. He continues to receive therapy and does not know how long it will continue. He further testified about difficulties with medical bills for his treatment and how the cost of his prescription medicine had "kicked up." Ms. Scott also explained that they were not able to make some of their payments to the trustee because of the medical expenses they incurred as a result of the condition Mr. Scott developed. In addition, she explained that she and her spouse will be able to complete their plan with additional Social Security benefits she expected to receive beginning August of this year. At the conclusion of the hearing the standing trustee maintained her objection to further deferral of plan payments. She also questioned the feasibility of the proposed modifications, whether the plan could be completed within sixty

---

[3] As discussed below, upon later receiving approval of Ms. Scott's application for Social Security benefits, the Debtors revised their proposal to increase their monthly plan payments.

months and whether the modification would decrease the distribution for unsecured claims.

With leave of court, the Debtors filed a post-hearing memorandum that contained detailed calculations of the plan arrearage and its repayment and payments necessary to complete the plan. (ECF No. 47.) The Scotts assert that they are now "40 months into their bankruptcy plan", have paid $22,735.07 to the trustee and that the current default is $2,155, "just under 4 months of payments." (*Id.* ¶¶ 15-16, 18.) Now receiving the additional Social Security benefits, the Debtors further claim that they are "now...able to pay a higher plan payment in order to meet their plan base within 60 months." (*Id.* ¶ 17.) Based upon their calculations, the Debtors estimate that the trustee will receive $11,137.25 under their proposed modified plain for distribution to the general unsecured claimants. According to them, the modified plan will pay out 87.5% of the allowed unsecured claims, a substantially higher amount than the 27% estimated in the original plan. (*Id.* at ¶¶ 12-13.) The Debtors also filed amended Schedules I and J that disclose that their monthly household income will be $3,623 as a result of the additional Social Security benefits received by Ms. Scott. They also schedule increased health care and health insurance expenses.

The Chapter 13 Trustee has not challenged the calculations or factual allegations presented by the Debtors in their supplemental submissions.

## DISCUSSION

Section 1329 of the Bankruptcy Code allows the modification of a confirmed plan before its completion in certain limited circumstances:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> (2) extend or reduce the time for such payments;
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take

> account of any payment of such claim other than under the plan; or
> (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage) if the debtor documents the cost of such insurance and demonstrates...
> (b) (1) Sections 1322(a), 1322(b), and 1323(c) of this title [11 USCS §§ 1322(a), 1322(b), and 1323(c)] and the requirements of section 1325(a) of this title [11 USCS § 1325(a)] apply to any modification under subsection (a) of this section.
> (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.
> (c) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) [11 USCS § 1325(b)(1)(B)] after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

11 U.S.C. § 1329. The Code does not impose any threshold requirement for modification. *In re Witkowski*, 16 F.3d 739, 742 (7th Cir. 1994). "Rather, according to the terms of §1329, the debtor ... has an absolute right to [timely] request modification of her plan." *Id.* However, the proposed modification must conform to the general limitations set out in § 1329. *Germeraad v. Powers*, 826 F.3d 962, 970 (7th Cir. 2016). And the request itself is subject to the discretion of the bankruptcy court. *In re Witkowski*, 16 F.3d at 748.

The Debtors' proposed modification meets these requirements. First, as the Debtors now make clear, they propose both to increase their monthly payments to $665 as well as extend the time for each payment. Thus, their proposal is of a type permitted under subsections (a)(1) and (2). Second, the proposed modification does not violate the restrictions identified in § 1329(b)(1). Neither party suggest that the proposed modification presents an issue under either § 1322(a) or § 1322(b), and I

accordingly conclude that those subsections do not bar the modification.[4] As to the "requirements of section 1325(a)", only three provisions appear to be pertinent here: the requirement contained in subsection (a)(3) that the proposal be made "in good faith and not by any means forbidden by law"; the best-interests-of-creditors test set out in subsection (a)(4); and the so-called feasibility test found in subsection (a)(6).[5] The Debtors uncontroverted testimony demonstrates that they seek leave to modify their plan to address their current arrearage resulting from Mr. Scott's recent medical problems and to adjust for the recent approval of additional Social Security benefits for Ms. Scott. Accordingly, I find that the Scott's propose this modification in good faith and by lawful means, and that it does not run afoul of the restrictions found in subsection (a)(3). The proposed plan modification also does not appear to adversely impact creditors, leaving unchanged from the original confirmed plan the base amount from which the distributions to creditors will be made. Indeed, the trustee does not contend that § 1325(a)(4) presents an issue, and I conclude that the modification is compliant on this point, too, and the subsection also does not restrict my discretion to allow the modification.

Section 1325(a)(6) requires that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). During the hearing the Chapter 13 Trustee suggested in passing that the proposed modification may present a feasibility issue. The standing trustee, however, did not question the Debtors on this point during the hearing. With leave of court, the Debtors filed amended Schedules I and J after the hearing. These disclose that the Scotts expect to incur additional monthly expenditures for medical expenses and health insurance and to receive an additional $973 per month in Social Security benefits beginning August 16, 2017. The amended schedules support the Debtors' assertion made in

---

[4] Section 1329(b)(1) also states that § 1323(c) applies to any modification. But that section does not appear to be relevant to the Court's discretion here. Section 1323(c) limits the rights of holders of secured claims to change their position regarding the plan under certain circumstances. No creditor, let alone secured creditor, has objected to the proposed modification that, in any case, does not appear to adversely affect holders of secured claims. *See In re Forte*, 341 B.R. 859, 867 (N.D. Ill. Bankr. 2005).
[5] The trustee has not suggested that the Debtors' request does not comply with the other requirements of § 1325(a).

their supplemental submission that "[d]ue to the increased Social Security income, [they] will now be able to pay a higher plan payment in order to meet their plan base within 60 months." (Supplement ¶ 17, ECF No. 47.) Although the scheduling Order provided the standing trustee with an opportunity to respond to the Debtor's supplemental submissions, the Chapter 13 Trustee has not.[6] The uncontroverted supplemental submissions are consistent with the Debtors' testimony and the record, and I find them credible. Although the Debtors' anticipated budget leaves little room for error, their proposed payment schedule appears to be within their means and circumstances. Accordingly, it appears that the feasibility requirement of § 1325(a)(6) does not present an issue for the proposed modification.

Third, the time to complete the modified plan will not exceed the maximum allowed under § 1329(c). The original plan provided for completion within 48 months. The Debtors seek to extend the duration of their plan by deferring their current "plan default", that is their current arrearage, within five years. The standing trustee does not dispute the Debtors' calculation contained in their post-hearing submission that as of mid-August 2017 the arrearage is now $2,155. (ECF No. 47.) There now also appears to be no dispute regarding the contention, supported by the amended schedules, that the Debtors will be able to pay off this amount and complete their plan within sixty months. As previously discussed, consideration of the Debtor's testimony and submission leads us to conclude that while little room for error, the Debtors credibly show that they can complete their plan as modified within that time. Having considered the grounds presented for the requested extension, namely Mr. Scott's medical condition and recent treatment, the Debtors' additional health insurance expenditures and the recent approval of Ms. Scott's application for

---

[6] For example, the standing trustee has not objected to the amended schedules I and J filed after the hearing nor objected to the Debtors' post-hearing submission, which purports to explain how the Debtors will be able to complete their plan as modified (Supplement ¶ 17, ECF No. 47), despite the opportunity to do so. (Order dated August 18, 2017, ECF No. 45.). Accordingly, I must conclude that the trustee does not contest the information proffered by the Debtors in their supplemental filings. *See Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (citing *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001).

additional benefits, I further find that due cause exists for the requested extension of the time to complete the plan to no more than the period allowed under §1329(c).

## CONCLUSION

For the foregoing reasons, we conclude that it is properly within this Court's discretion and appropriate to overrule the standing trustee's objection and grant the Debtors' request to modify their confirmed Chapter 13 to permit them to increase their monthly payments as proposed to pay down their current arrearage and complete their plan within sixty months. As the Seventh Circuit recently pointed out in its Powers decision, doing so "is consistent with Chapter 13's policy of requiring debtors to repay creditors to the extent they are able." 826 F.3d at 974 (citing *Barbosa v. Soloman,* 234 F.3d 38, 40-41 (1st Cir. 2000); *In re Arnold,* 869 F.2d 240, 241-42 (4th Cir. 1989)). Accordingly, the Debtors' Motion to Modify Confirmed Plan will be GRANTED.

Further, we find that the Debtors are not in material default pursuant to the modifications of their plan that are approved. Accordingly, the Chapter 13 Trustee's Motion to Dismiss will be DENIED WITHOUT PREJUDICE.

An order allowing the approved modification and denial of the motion of the standing trustee will be entered together with this opinion.

DATE: August 31, 2017          ENTER:

                               _____
                               Thomas M. Lynch
                               United States Bankruptcy Judge